St. Louis, Iron Mountain & Southern Railway
Company *v.* Morgan.[*]

Hart, J., (dissenting).  Mr. Morgan testified that he was not able to read the release signed by him and that he was promised permanent employment as a consideration for signing the release.  It is true that he was given employment, but he was discharged in a very short time after he was employed and, according to his testimony, he was capable of performing the services required of him, and his discharge was wrongful.  When this fact is taken into consideration in connection with the fact that he was discharged shortly after the release was signed, I think the jury would have been warranted in finding that the release was procured by a fraudulent promise of permanent employment.

It is true the railroad employed him as it promised to do and claimed that it discharged him for cause; on the other hand, as we have already stated, the plaintiff testified that he was wrongfully discharged, and the discharge, coming within so short a time after the release was signed, warranted submitting to the jury the question of whether or not the release was procured by reason of fraudulent representations.

I am also of the opinion that there was no error in refusing to give instruction No. 24.  I agree with the opinion of the majority that the former opinion is the law of the case, but, it is the law of the case only in so far as the facts in the present appeal are similar to those on the former appeal.  It will be remembered that the engineer and fireman both testified when the case was first tried and the record on the former appeal shows that they stated they saw plaintiff for a long distance off; in the present appeal the testimony of the plaintiff shows that when he looked back the train was about midway of the curve and that the curve was probably a quarter of a mile long.  He stated that he never heard any whistle sound or bell ring.  As soon as he looked back over his

[*]Original opinion delivered December 7, 1914, *per* McCulloch, C. J., and is reported at page 529, this volume.

shoulder the plaintiff stopped the car as quickly as he could and threw off the track jack which was on the car beside him. He then immediately took hold of the car and lifted it off the ends of the ties and attempted to pick up the little wheel which had caught on the track, to lift it off. He said that when he attempted to pick up the little wheel the train was about two telegraph poles from him and that he looked back at the train and saw the engineer; that the engineer was standing, had hold of the throttle, and looked like he was stopping the train. The distance between telegraph poles is 130 feet.

The plaintiff was not a trespasser. He was a servant of the defendant and his duties required him to ride over the track on the speeder. It is true that it was his duty when he saw a train to remove the speeder from the track in order to permit the passage of the train. He knew that if the speeder caught on the track and was hit by the train it was likely to wreck the train. It was his duty, then, to remove the speeder if he could do so with safety to himself.

There is nothing in the record tending to contradict the testimony of the plaintiff. We have, therefore, on the present appeal, an essentially different state of facts from that presented on the former appeal. As far as the record in this case discloses, when the engineer first saw the plaintiff on the track it was apparent to him that the plaintiff was in a perilous position. Therefore it was an abstract proposition of law to tell the jury that the engineer had a right to rely upon the presumption that the plaintiff would get off the track, for, as we have already seen, as far as the testimony shows, the plaintiff was in a perilous position when the engineer first saw him.